UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BEVERLY PATTERSON, | ) | Civil Action No. 1:19cv2003 |
| ADMINISTRATRIX, EXECUTRIX OF | ) | |
| THE ESTATE OF JENNIFER RIEFLER, | ) | Judge |
| DECEASED | ) | |
| 12157 Calvin Drive | ) | |
| Brecksville, Ohio 44147 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **COMPLAINT, JURY DEMAND** |
| v. | | **ENDORSED HEREON AND REQUEST** |
| | | **FOR PRODUCTION OF DOCUMENTS** |

JOHNSON & JOHNSON
c/o M. H. Ullmann, Registered Agent
One Johnson & Johnson Plaza
New Brunswick, NJ  08933

and

JOHNSON & JOHNSON CONSUMER
COMPANIES, INC.
c/o Johnson & Johnson, Registered Agent
One Johnson & Johnson Plaza
New Brunswick, NJ  08933

and

IMERYS TALC AMERICA, INC.
FKA LUZENAC AMERICA, INC.
c/o Corporation Service Company,
Registered Agent
2711 Centerville Road, Suite 400
Wilmington, DE  19808

and

PERSONAL CARE PRODUCTS
COUNCIL
FKA COSMETIC, TOILETRY AND
FRAGRANCE ASSOCIATION
1620 L Street, Northwest, Suite 1200
Washington DC  20036

Defendants.

1

Now comes the Plaintiff, Beverly Patterson as Administratrix of the Estate of Decedent, by and through undersigned Council, files this Complaint against Defendants, Johnson & Johnson, Johnson & Johnson Consumer Companies, Inc. and based on personal knowledge:

## I.  INTRODUCTION

1.      That this action arises out of Decedent's diagnosis of ovarian cancer and her demise therefrom, which was directly and proximately caused by her regular and prolonged use of talcum powder containing product known as Johnson & Johnson Baby Power (hereinafter "J&J Baby Powder") in the perineal area.  Decedent's diagnosis is a direct and proximate result of Defendants' and/or their corporate predecessors' negligent, willful and wrongful conduct in connection with the design, development, manufacture, testing, packaging, promoting, marketing, distribution, labeling and/or sale of J&J Baby Powder.

## II.  VENUE AND JURISDICTION

2.      This is an action for damages that exceeds the jurisdictional minimum of this Court.

3.      Jurisdiction in this case is based on diversity jurisdiction pursuant to 28 U.S.C. §1332. Plaintiff is a U.S. citizen residing in the city of Brecksville, Ohio.

4.      Venue is proper pursuant to 28 U.S.C. §1391(a)(2) because Defendants reside in the jurisdiction and MDL has been set here to address the claims of a nature that Plaintiff brings.

5.      This suit is brought under the statutory and common law of Ohio to recover damages and other relief, including the costs of suit and reasonable attorneys' and expert fees for the injuries Plaintiffs sustained as a result of the Defendants' and/or their corporate predecessors' negligent and wrongful conduct in connection with the design, development, formulation, manufacturing, testing, packaging, promoting, marketing, distributing, labeling and/or sale of J&J Baby Powder.

### III.  PARTIES

6.      Jennifer Riefler (hereafter Decedent) was born on February 10, 1969, and used J&J Baby Powder for decades.  As a direct and proximate result of using J&J Baby Powder, Decedent died of ovarian cancer on February 22, 2012.

7.      Plaintiff, Beverly Patterson, is the Executrix of Decedent's estate, her sister, and is an adult and U.S. citizen residing at 12157 Calvin Drive, Brecksville, Ohio, 44147.

8.      Defendant, Johnson & Johnson, is a New Jersey corporation with its principal place of  business being located in the State of New Jersey.   At all pertinent times herein, Johnson & Johnson was engaged in the business of manufacturing, marketing, testing, promoting, selling and/or distributing J&J Baby Powder, throughout markets world wide.

9.      Johnson & Johnson may be served with process of this Court via service of its registered agent, M. H. Ullmann, located at One Johnson & Johnson Plaza, New Brunswick, New Jersey 08901-1241.

10.      Defendant, Johnson & Johnson Consumer Companies, Inc., is a New Jersey corporation with its principal place of business being located in the State of New Jersey.  At all pertinent times herein, Johnson & Johnson Consumer Companies, Inc. was engaged in the business of manufacturing, marketing, testing, promoting, selling and/or distributing J&J Baby Powder

11.      Johnson & Johnson Consumer Companies, Inc. may be served with process of this Court via service on its registered agent, Johnson & Johnson, located at One Johnson & Johnson Plaza, New Brunswick, New Jersey 08933.

12.      Defendants, Johnson & Johnson and Johnson & Johnson Consumer Companies, Inc., have, at all pertinent times herein, engaged in the business of designing, developing, licensing, manufacturing, distributing, selling, marketing and/or introducing into interstate

3

commerce J&J Baby Powder.

13.     At all times pertinent herein, Defendant, Johnson & Johnson Consumer

Companies, Inc., has been a wholly-owned subsidiary of Defendant, Johnson & Johnson, under

the complete dominion of and control of Defendant, Johnson & Johnson. Hereinafter, unless

otherwise delineated, these two entities shall be collectively referred to as the "Johnson &

Johnson Defendants".

14.     Defendant, Imerys Talc America, Inc., f/k/a Luzenac America, Inc. ("Imerys" or

"Imerys Talc"), is a Delaware corporation with its principal place of business being located in

the State of California.  At all pertinent times herein, Imerys Talc America, Inc., has maintained

a registered agent in the State of Delaware. Imerys Talc America, Inc. may be served with

process of this Court via service on its registered agent, Corporation Service Company, located

at 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

15.     At all times pertinent herein, Imerys Talc has been in the business of mining and

distributing talcum powder for use in talcum powder based products, including J&J Baby

Powder. Imerys Talc is the successor or continuation of Luzenac America, Inc. and Imerys Talc

America, Inc. is legally responsible for all liabilities incurred when it was known as Luzenac

America, Inc.

16.     Defendant, Personal Care Products Council ("PCPC"), f/k/a Cosmetic, Toiletry

and Fragrance Association ("CTFA"), is a corporation organized under the laws of the District

of Columbia, with its principal place of business being located in the District of Columbia.

Cosmetic, Toiletry and Fragrance Association, n/k/a Personal Care Products Council

Foundation does not maintain a registered agent and, therefore, may be served with process of

this Court via service at its principal place of business located at Personal Care Products

Council, 1620 L Street, Northwest, Suite 1200, Washington, District of Columbia 20036.  PCPC

is the successor or continuation of CTFA and PCPC is legally responsible for all liabilities incurred when it was known at CTFA.

IV. GENERAL FACTUAL BACKGROUND

17.     Talc is a magnesium trisilicate and is mined from the earth. Talc is an inorganic mineral.  Defendant Imerys mined the talc contained in J&J Baby Powder.

18.     Talc is the main substance in talcum powders. The Johnson & Johnson Defendants manufactured J&J Baby Powder.  J&J Baby Powder is composed almost entirely of talc.

19.     At all times pertinent herein, a feasible alternative to J&J Baby Powder has existed. Cornstarch is an organic carbohydrate that is quickly broken down by the body with no known health effects. Cornstarch powders have been sold and marketed for the same uses with nearly the same effectiveness.

20.     Imerys Talc[1] has continually advertised and marketed talc as safe for human use.

21.     Imerys Talc supplies customers with material safety data sheets for talc. These material safety data sheets are supposed to convey adequate health and warning information to its customers.

22.     During the time in question, the Johnson & Johnson Defendants advertised and marketed this product as the beacon of "freshness" and "comfort", eliminating friction on the skin, absorbing "excess wetness" helping keep skin feeling dry and comfortable and "clinically proven gentle and mild".  The Johnson & Johnson Defendants compelled women through advertisements to dust themselves with this product to mask odors. The bottle of "Johnson's Baby Powder" specifically targets women by stating, "For you, use every day to help feel soft,

---

[1] All allegations regarding actions taken by Imerys Talc also include actions taken while that entity was known as Luzenac America, Inc.

fresh and comfortable".

23.     In 1971, the first study was conducted that suggested an association between talc and ovarian cancer.  This study was conducted by Dr. W. J. Henderson and others in Cardiff, Wales.

24.     In 1982, the first epidemiologic study was performed on talc powder use in the female genital area. This study was conducted by Dr. Daniel Cramer and others. This study found a 92% increased risk in ovarian cancer with women who reported genital talc use. Shortly after this study was published, Dr. Bruce Semple of Johnson & Johnson came and visited Dr. Cramer about his study. Dr. Cramer advised Dr. Semple that Johnson & Johnson should place a warning on its talcum powder about the ovarian cancer risks so that the women can make an informed decision about their health.

25.     Since 1982 there have been approximately twenty-two (22) additional epidemiologic studies providing data regarding the association of talc and ovarian cancer. Nearly all of these studies have reported an elevated risk for ovarian cancer associated with genital talc use in women.

26.     In 1993 the United States National Toxicology Program published a study on the toxicity of non-asbestiform talc and found clear evidence of carcinogenic activity.  Talc was found to be a carcinogen, with or without the presence of asbestos-like fibers.

27.     In response to the United States Technology Program's study, the Cosmetic Toiletry and Fragrance Association (CTFA) formed the Talc Interested Party Task Force (TIPTF). Johnson & Johnson, Johnson & Johnson Consumer Companies, Inc. and Luzenac were members of the CTFA and were the primary actors and contributors of the TIPTF. The stated purpose of the TIPIF was to pool financial resources of these companies in an effort to collectively defend talc use at all costs and to prevent regulation of any type over this industry.

The TIPTF hired scientists to perform biased research regarding the safety of talc, members of the TIPTF edited scientific reports of the scientists hired by this group prior to the submission of these scientific reports to governmental agencies, members of the TIPTF knowingly released false information about the safety of talc to the consuming public and used political and economic influence on regulatory bodies regarding talc. All of these activities have been well coordinated and planned by these companies and organizations over the past four (4) decades in an effort to prevent regulation of talc and to create confusion to the consuming public about the true hazards of talc relative to ovarian cancer.

28.     On November 10, 1994, the Cancer Prevention Coalition mailed a letter to then Johnson & Johnson C.E.O., Ralph Larson, informing his company that studies as far back as 1960's "...show [ ] conclusively that the frequent use of talcum powder in the genital area pose [ ] serious health risk of ovarian cancer". The letter cited a recent study by Dr. Bernard Harlow from Harvard Medical School confirming this fact and quoted a portion of the study where Dr. Harlow and his colleagues discouraged the use of talc in the female genital area. The letter further stated that 14,000 women per year die from ovarian cancer and that this type of cancer is very difficult to detect and has a low survival rate.  The letter concluded by requesting that Johnson & Johnson withdraw talc products from the market because of the alternative of cornstarch powders, or at a minimum, place warning information on its talc-based powders about ovarian cancer risk they pose.

29.     In 1996 the condom industry stopped dusting condoms with talc due to the health concerns of ovarian cancer.

30.     In February 2006 the International Association for the Research of Cancer (IARC), part of the World Health Organization, published a paper whereby they classified perineal use of talc based body powder as a "Group 2B" human carcinogen. IARC, which is

universally accepted as the international authority on cancer issues, concluded that studies from around the world consistently found an increased risk of ovarian cancer in women from perineal use of talc.  IARC found that between 16-52% of women in the world were using talc to dust their perineum and found an increased risk of ovarian cancer in women talc users ranging from 30-60%.  IARC concluded with this "Evaluation":  "There is limited evidence in humans for the carcinogenicity of perineal use of talc-based body powder."  By definition, "Limited evidence of carcinogenicity" means "a positive association has been observed between exposure to the agent and cancer for which a casual interpretation is considered by the Working Group to be credible but chance, bias or confounding could not be ruled out with reasonable confidence".

31.     In approximately 2006, the Canadian government, under The Hazardous Products Act and associated Controlled Products Regulations, classified talc as a "D2A", "very toxic", "cancer causing" substance under its Workplace Hazardous Materials Information System (WHMIS). Asbestos is also classified as "D2A".

32.     In 2006 Imerys Talc began placing a warning on its Material Safety Data Sheets (MSDS) it provided to the Johnson & Johnson Defendants regarding the talc it sold to them. These MSDS's not only provided the warning information about the IARC classification, but also included warning information regarding "States Rights to Know" and warning information about the Canadian Government's "D2A" classification of talc as well.

33.     The Defendants had a duty to know and warn about the hazards associated with the use of J&J Baby Powder.

34.     The Defendants failed to inform its customers and warn users of J&J Baby Powder of a known catastrophic health hazard associated with the use of its products.

35.     In addition, the Defendants procured and disseminated false, misleading and biased information regarding the safety of J&J Baby Powder to the public and used influence

over governmental and regulatory bodies regarding talc.

36.     Decedent used J&J Baby Powder for feminine hygiene purposes.  This was an intended and foreseeable use of the product based on the advertising, marketing and labeling of J&J Baby Powder.  Plaintiff's representative is in possession of the powder used in the 1980s.

37.     In 2012, decedent expired from ovarian cancer.  She was forty-three (43) years old.

38.     As a direct and proximate result of Defendants' calculated and reprehensible conduct, Decedent developed ovarian cancer, which ultimately resulted in her demise.

39.     Plaintiff, Beverly Patterson, is Executrix of the Estate of Decedent.

## V.  FEDERAL STANDARDS AND REQUIREMENTS

40.     Upon information and belief, the Defendants have failed to comply with all federal standards and requirements applicable to the sale of J&J Baby Powder, including but not limited to, violations of various sections and subsections of the United States Code and the Code of Federal Regulations.

## VI.  CLAIMS AGAINST DEFENDANTS
## COUNT ONE - PRODUCT LIABILITY - FAILURE TO WARN
## (IMERYS TALC AND JOHNSON & JOHNSON DEFENDANTS)

41.     Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

42.     At all times pertinent herein, Imerys Talc mined and sold talc to the Johnson & Johnson Defendants, which it knew that Johnson & Johnson was then packaging and selling to consumers as J&J Baby Powder and it knew that consumers of J&J Baby Powder were using it to powder their perineal regions.

43.     At all times pertinent herein, Imerys Talc knew and/or should have known of the unreasonably dangerous and carcinogenic nature of the talc it was selling to the Johnson &

Johnson Defendants, especially when used in a woman's perineal region and, it knew or should have known, that Johnson & Johnson was not warning its consumers of this danger.

44.     At all times pertinent herein, the Johnson & Johnson Defendants were manufacturing, marketing, testing, promoting, selling and/or distributing J&J Baby Powder in the regular course of business.

45.     At all times pertinent herein, Decedent used J&J Baby Powder for decades.

46.     At all times pertinent herein, all Defendants in this action knew, or should have known, that the use of talcum powder based products in the perineal area significantly increases the risk of cancer based upon scientific knowledge dating back to the 1960's.

47.     At all times pertinent herein, including the time of sale and consumption, J&J Baby Powder, when put to the aforementioned reasonably foreseeable uses, was in an unreasonably dangerous and defective condition because it failed to contain adequate and proper warnings and/or instructions regarding the increased risk of cancer associated with the use of the product by women to powder their perineal area. Defendants themselves failed to properly and adequately warn and instruct Decedent as to the risks of J&J Baby Powder given her need for this information.

48.     Had Decedent received a warning that the use of J&J Baby Powder would have significantly increased her risk of cancer, she would not have used the same.  As a proximate result of Defendants" design, manufacture, marketing, sale and distribution of J&J Baby Powder, Decedent, was injured catastrophically, suffering severe pain, disability, impairment, loss of enjoyment of life, loss of care, comfort, economic damages and death.

49.     The development of ovarian cancer by Decedent was the direct and proximate result of the unreasonably dangerous and defective condition of J&J Baby Powder at the time of sale and consumption, including its lack of warnings.  Further, Decedent suffered injuries and

damages, including but not limited to, conscious pain and suffering, medical expenses and death.

50.     The Defendants' products were defective because they failed to contain warnings and/or instructions, and breached express warranties and/or failed to conform to other express factual representation upon which Decedent justifiably relied in electing to use the product.  The defect or defects made the products unreasonably dangerous especially to Decedent, who could reasonably be expected to use and rely upon the product.  As a result, the defect or defects were a producing cause of the injuries and damages of Decedent.

51.     The Defendants' product failed to contain, and, continue to this day not to contain, adequate warnings and/or instructions regarding the increased risk of cancer with the use of the product by women. The Defendants continue to market, advertise and expressly represent to the general public that it is safe for women to use their product regardless of application. These Defendants continue with these marketing and advertising campaigns despite having scientific knowledge that dates back to the 1960's that their products increase the risk of cancer in women when used in the perineal area. Therefore, the Defendants are liable to Plaintiffs for their wrongful conduct under the Doctrine of Strict Liability pursuant to §402A of the Restatement (Second) of Torts.

WHEREFORE, Plaintiffs pray for judgment against Imerys Talc and the Johnson & Johnson Defendants in a fair and reasonable sum in excess of Seventy-Five Thousand Dollars ($75,000.00), together with costs expended herein and such further and other relief as the Court deems just and appropriate.

COUNT TWO - PRODUCT LIABILITY –
DEFECTIVE MANUFACTURE AND DESIGN
(IMERYS TALC AND JOHNSON & JOHNSON DEFENDANTS)

52.     Plaintiffs reallege and incorporate by reference every allegation of this Complaint as if each were set forth fully and completely herein.

53.     Defendants' product was defectively and improperly manufactured, rendering the product deficient and unreasonably dangerous and hazardous to Decedent.

54.     Defendants' product is inherently dangerous and defective, unfit and unsafe for its intended and reasonably foreseeable use, and does not meet or perform to the expectations of consumers.

55.     The product at issue creates risks to the health and safety of the consumers that are far more significant and devastating than the risks posed by other products on the market used for the same therapeutic purposes.  There is a feasible and reasonable alternative design.

56.     Defendants have intentionally and recklessly designed, manufactured, marketed, labeled, sold and distributed the product with wanton and willful disregard for the rights and health of Decedent, and others, and with malice, placing their economic interests above the health and safety of Decedent and others similarly situated.

57.     As a proximate result of Defendants' design, manufacture, labeling, marketing, sale and distribution of the product, Decedent sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, economic damages and premature death, since her life expectancy would have been at least thirty (30) additional years.

58.     Defendants are strictly liable in tort to Plaintiffs for their wrongful conduct pursuant to §402A of the Restatement (second) of Torts.

WHEREFORE, Plaintiff demands judgment against Defendants of compensatory

damages, punitive damages, interest, attorneys' fees, costs of suit, and such further relief as the Court deems equitable and just.

COUNT THREE – PRODUCT LIABILITY – NEGLIGENCE
(IMERYS TALC)

59.     Plaintiff hereby incorporates by reference each of the preceding paragraphs as if fully set forth herein.

60.     At all times pertinent herein, Defendants had a duty to exercise reasonable care of consumers, including Decedent, in the design, development, manufacture, testing, inspection, packaging, promotion, marketing, distribution, labeling and/or sale of J&J Baby Powder.

61.     At all times pertinent herein, Imerys Talc mined and sold talc to the Johnson & Johnson Defendants, which it knew, or should have known, was then being packaged and sold to consumers as J&J Baby Powder by the Johnson & Johnson Defendants. Further, Imerys Talc knew, or should have known, that consumers of J&J Baby Powder were using it to powder their perineal regions.

62.     At all times pertinent herein, Imerys Talc knew, or should have known, that the use of talcum powder based products in the perineal area significantly increases the risk of cancer based upon scientific knowledge dating back to the 1960's.

63.     At all times pertinent herein, Imerys Talc knew, or should have known, that Johnson & Johnson was not providing warnings to consumers of J&J Baby Powder of the risk of cancer posed by talc contained therein.

64.     At all times pertinent herein, Imerys Talc was negligent in providing talc to the Johnson & Johnson Defendants, when it knew, or should have known, that the talc would be used in J&J Baby Powder, without adequately taking steps to ensure that ultimate consumers of J&J Baby Powder, including Decedent, received the information that Imerys Talc possessed on

13

the carcinogenic properties of talc, including its risk of causing cancer.

65.     Defendants breached their duty of reasonable care to Decedent in that they negligently designed, developed, manufactured, tested, inspected, packaged, promoted, marketed, distributed, labeled and/or sold the subject product.

66.     As a direct and proximate result of Imerys Talc's negligence, Decedent purchased and used, as aforesaid, J&J Baby Powder that directly and proximately caused her to develop ovarian cancer and die. Decedent was caused to incur medical bills and conscious pain and suffering before the death of Decedent.

WHEREFORE, Plaintiff prays for judgment against Imerys Talc in a fair and reasonable sum in excess of Seventy-Five Thousand Dollars ($75,000.00), together with costs expended herein and such further and other relief as the Court deems just and appropriate.

<u>COUNT FOUR - PRODUCT LIABILITY – NEGLIGENCE</u>
<u>(JOHNSON & JOHNSON DEFENDANTS)</u>

67.     Plaintiff hereby incorporate by reference each of the preceding paragraphs as if fully set forth herein.

68.     The Johnson & Johnson Defendants were negligent in marketing, designing, manufacturing, producing, supplying, inspecting, testing, selling and/or distributing J&J Baby Powder in one or more of the following respects:

1. In failing to warn Decedent of the hazards associated with the use of J&J Baby Powder.

2. In failing to properly test their products to determine adequacy and effectiveness or safety measures, if any, prior to releasing J&J Baby Powder for consumer use.

3. In failing to properly test their products to determine the increased risk of ovarian cancer during the normal and/or intended use of J&J Baby Powder.

4. In failing to inform ultimate users, such as Decedent, as to the safe and proper methods of handling and using J&J Baby Powder.

5. In failing to remove J&J Baby Powder from the market when the Defendants knew, or should have known, J&J Baby Powder was defective.

6. In failing to instruct the ultimate users, such as Decedent, as to the methods for reducing the type of exposure to J&J Baby Powder which caused increased risk of cancer.

7. In failing to inform the public in general and Decedent in particular of the known dangers of using J&J Baby Powder for dusting the perineum.

8. In failing to advise users how to prevent or reduce exposure that caused increased risk for cancer.

9. In marketing and labeling J&J Baby Powder as safe for all uses despite knowledge to the contrary.

10. In failing to act like a reasonably prudent company under similar circumstances.

Each and all of these acts and omissions, taken singularly or in combination, were a proximate cause of the injuries and death of Decedent and, thus, the injuries and damages of the Plaintiff.

69. At all times pertinent herein, the Johnson & Johnson Defendants knew, or should have known, that J&J Baby Powder is unreasonably dangerous and defective when put to their reasonably anticipated uses.

70. As a direct and proximate result of the Johnson & Johnson Defendants' negligence, in one or more of the aforementioned ways, Decedent purchased and used, as aforesaid, J&J Baby Powder that directly and proximately caused her to develop ovarian cancer and die. Further, Decedent incurred medical bills and conscious pain and suffering for which her estate has a claim.

WHEREFORE, Plaintiff prays for judgment against the Johnson & Johnson Defendants in a fair and reasonable sum in excess of Seventy Five Thousand Dollars ($75,000.00), together with costs expended herein and such further and other relief as the Court deems just and appropriate.

## COUNT FIVE - BREACH OF EXPRESS WARRANTY
## (JOHNSON & JOHNSON DEFENDANTS)

71.     Plaintiff hereby incorporates by reference each of the preceding paragraphs as if fully set forth herein.

72.     The Johnson & Johnson Defendants expressly warranted, through direct-to-consumer marketing, advertising and labels, that J&J Baby Powder was safe and effective for reasonably anticipated uses, including use by women in the perineal area.

73.     That J&J Baby Powder did not conform to these express representations because it causes serious injury when used by women in the perineal area in the form of gynecological cancer. Defendants' breaches constitute violations of Ohio's Breach of Warranty Statute. Specifically, Uniform Commercial Code §2-313 provides that an affirmation or promise, including a description of the goods, becomes part of the basis of the bargain and creates an express warranty that the goods shall confirm to the promise and the description.

74.     As a direct and proximate result of Defendants' breach of warranty, Decedent purchased and used, as aforesaid, J&J Baby Powder that directly and proximately caused her to develop ovarian cancer and expire. Further, Decedent incurred medical bills and conscious pain and suffering.

75.     Defendants designed, manufactured, assembled, fabricated and/or distributed the products in question in a defective condition and, therefore, breached an implied warranty of fitness and an implied warranty of merchantability, in addition to various express warranties. The Defendants, as sellers, were merchants with respect to the products which they sold. In addition, these products were not fit for the ordinary purposes for which such goods are used. The Defendants also had reason to know of the particular purpose for which this product would be used, as well as the knowledge that persons, such as Decedent, would rely on the seller's skill

to furnish suitable products.

76.     Therefore, the Defendants have breached the implied warranty of merchantability as well as the implied warranty of fitness for a particular purpose, in addition to various express warranties.  Such breach or breaches of implied and express warranties by the Defendants were a proximate cause of the injuries and death of Decedent and the damages sustained by Plaintiff.

WHEREFORE, Plaintiff prays for judgment against the Johnson & Johnson Defendants in a fair and reasonable sum in excess of Seventy-Five Thousand Dollars ($75,000.00), together with costs expended herein and such further and other relief as the Court deems just and appropriate.

COUNT SIX - BREACH OF IMPLIED WARRANTIES
(JOHNSON & JOHNSON DEFENDANTS)

77.     Plaintiff hereby incorporates by reference each of the preceding paragraphs as if fully set forth herein.

78.     At the time the Defendants manufactured, marketed, labeled, promoted, distributed and/or sold J&J Baby Powder, the Johnson & Johnson Defendants knew of the uses for which J&J Baby Powder was intended, including use by women in the perineal area, and impliedly warranted J&J Baby Powder to be merchantable quality and safe for such use.

79.     Defendants breached their implied warranties of J&J Baby Powder sold to Decedent because they were not fit for their common, ordinary and intended uses, including use by women in the perineal area.

80.     As a direct, foreseeable and proximate result of the Defendants' breaches of implied warranties, Decedent purchased and used, as aforesaid, J&J Baby Powder that directly and proximately caused her to develop ovarian cancer and die. Further, medical bills were incurred and conscious pain and suffering was sustained for which Plaintiff may recover.

17

WHEREFORE, Plaintiff prays for judgment against the Johnson & Johnson Defendants in a fair and reasonable sum in excess of Seventy-Five Thousand Dollars ($75,000.00), together with costs expended herein and such further and other relief as the Court deems just and appropriate.

<u>COUNT SEVEN - WRONGFUL DEATH</u>
<u>(ALL DEFENDANTS)</u>

81.     Plaintiff hereby incorporates by reference each of the preceding paragraphs as if fully set forth herein.

82.     As a direct and proximate result of the conduct of the Defendants and the defective nature of J&J Baby Powder as described above, Decedent suffered bodily injuries resulting in pain and suffering, disability, disfigurement, mental anguish, loss of capacity of the enjoyment of life, shortened life expectancy, expenses for hospitalization, medical and nursing treatment, loss of earnings, loss of ability to earn, funeral expenses and death.

83.     Plaintiff brings this claim under the Ohio Wrongful Death Statute.

84.     As a direct and proximate cause of the conduct of Defendants, Plaintiff, as the estate representatives, seeks reimbursement of hospital, nursing, medical expenses, death related and estate administration expenses as a result of the demise of decedent.  Plaintiff brings this claim for these damages and for all pecuniary losses sustained.

WHEREFORE, Plaintiff prays for judgment against the Johnson & Johnson Defendants in a fair and reasonable sum in excess of Seventy-Five Thousand Dollars ($75,000.00), together with costs expended herein and such further and other relief as the Court deems just and appropriate.

<u>COUNT EIGHT - SURVIVAL</u>
<u>(ALL DEFENDANTS)</u>

85.     Plaintiff hereby incorporates by reference each of the preceding paragraphs as if

fully set forth herein.

86.     As a direct and proximate result of the conduct of Defendants, Decedent's illness and suffering through death caused her mother and siblings great anguish, depression and psychological stress.  This claim is brought by Plaintiff, Beverly Patterson, decedent's sister, as the Executrix of the Estate of Decedent, under Ohio's Wrongful Death Statute.

WHEREFORE, Plaintiff prays for judgment against the Defendants in a fair and reasonable sum in excess of Seventy-Five Thousand Dollars ($75,000.00), together with costs expended herein and such further and other relief as the Court deems just and appropriate.

## COUNT NINE - PUNITIVE DAMAGES UNDER COMMON LAW
## (ALL DEFENDANTS)

87.     Plaintiff hereby incorporates by reference each of the preceding paragraphs as if fully set forth herein.

88.     Plaintiff is entitled to punitive damages because Defendants' wrongful acts and/or omissions were wanton or in conscious disregard of the rights of others.  Defendants misled both the medical community and the public at large, including Decedent by making false representations about the safety and utility of J&J Baby Powder and by failing to provide adequate instructions concerning their use.

89.     The Defendants have acted willfully, wantonly with an evil motive and recklessly in one or more of the following ways:

90.     Defendants knew of the unreasonably high risk of cancer poised by J&J Baby Powder before manufacturing, marketing, distributing and/or selling J&J Baby Powder, yet purposefully proceeded with such action;

1.  Despite their knowledge of the high risk of cancer associated with J&J Baby Powder, Defendants affirmatively minimized this risk through marketing and promotional efforts and product labeling;

2. Through the actions outlined above, Defendants expressed a reckless indifference to the safety of users of J&J Baby Powder and Decedent. Defendants' conduct, as described herein, knowing the dangers and risks of J&J Baby Powder, yet concealing and/or omitting this information, in furtherance of their conspiracy and concerted action was outrageous because of Defendants' evil motive or a reckless indifference to the safety of users of J&J Baby Powder.

91. The Defendants' conduct was a conscious disregard for the rights, safety and welfare of Decedent. The Defendants acted with willful and wanton disregard for the safety of Decedent. The Defendants' conduct constitutes gross negligence. Defendants' gross negligence was a proximate cause of Decedent's demise and Plaintiff's injuries and damages and, as such, the Defendants are liable for exemplary and punitive damages.

92. Defendants, Johnson & Johnson and Johnson & Johnson Consumer Companies, Inc., have a pattern and practice of this type of conduct. Specifically, these Defendants built their company on the credo, "We believe our first responsibility is to the doctors, nurses, and patients, to mothers and fathers and all others who use our products and services." They have been served in a number of product liability cases and found liable.

93. The above-listed evidence indicates a pattern and practice of the Defendants, Johnson & Johnson and Johnson & Johnson Consumer Companies, Inc. to place corporate profits over health and well-being of its customers. Such a pattern and practice has been followed by the Defendants regarding "Johnson's Baby Powder".

94. All of the Defendants have been aware for nearly forty (40) years of independent scientific studies linking the use of their products to the increased risk of gynecological cancer in women when used in the perineal area. Despite this overwhelming body of evidence, all of the Defendants have failed to inform their consumers of this known hazard. As such, all of the Defendants should be liable for punitive damages to the Plaintiffs.

95. As a direct and proximate result of the willful, wanton, evilly motivated and/or

reckless conduct of the Defendants, Plaintiff has sustained damages as set forth above.

WHEREFORE, Plaintiff prays for judgment for punitive damages against all Defendants, each of them, in a fair and reasonable amount sufficient to punish Defendants and deter them and others from engaging in similar conduct in the future, costs expended herein, and such further and other relief as the Court deems just and appropriate.

### COUNT TEN - VIOLATIONS OF CONSUMER PROTECTION LAWS
### (IMERYS TALC AND JOHNSON & JOHNSON DEFENDANTS)

96. Plaintiff hereby incorporates by reference each of the preceding paragraphs as if fully set forth herein.

97. Decedent purchased and used Defendants' J&J Baby Powder primarily for personal use and, thereby, suffered ascertainable losses, including death, as a result of Defendants' actions in violation of the consumer protection laws.  Counsel is in possession of powder from her family home dating back to the 1980's.

98. Had Defendants not engaged in the deceptive conduct described herein, Decedent would not have purchased and/or paid for Defendants' product and would not have incurred related medical costs and injury.

99. Defendants engaged in wrongful conduct while at the same time obtaining, under false pretenses, moneys from Decedent for J&J Baby Powder that would not have been paid had Defendants not engaged in unfair and deceptive conduct.

100. Defendants engaged in unfair methods of competition and deceptive acts or practices that were proscribed by law, including the following:

1. Representing that goods or services have characteristics, ingredients, uses, benefits or quantities that they do not have.

2. Advertising goods or services with the intent not to sell them as advertised.

3. Engaging in fraudulent or deceptive conduct that creates a likelihood of confusion or

misunderstanding.

101.    That Decedent was injured by the cumulative and indivisible nature of Defendants' conduct.  The cumulative effect of Defendants' conduct directed at Decedent and other consumers was to create for and sell J&J Baby Powder.  Each aspect of Defendants' conduct combined to artificially create sales of the product.

102.    Defendants have a statutory duty to refrain from unfair or deceptive acts or trade practices in the design, labeling, development, manufacture, promotion and sale of J&J Baby Powder.

103.    Had Defendants not engaged in the deceptive conduct described above, Decedent would not have purchased and/or paid for the product and would not have incurred related medical costs and premature death.

104.    Defendants' deceptive, unconscionable or fraudulent representations and material omissions to Decedent and Plaintiff, physicians and consumers constituted unfair and deceptive acts and trade practices in violation of the state consumer protection statutes listed.

105.    Defendants' actions, as complained of herein, constitute unfair competition or unfair, unconscionable, deceptive or fraudulent acts, or trade practices in violation of state consumer protection statutes, as listed above.

106.    Defendants have engaged in unfair competition or unfair or deceptive acts or trade practices or have made false representations in violation of Ohio statute.

107.    Under these statutes, Defendants are the suppliers, manufacturers, advertisers and sellers who are subject to liability under such legislation for unfair, deceptive, fraudulent and unconscionable consumer sales practices.

108.    Defendants violated the statues that were enacted in these states to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices

and false advertising by knowingly and falsely representing that Defendants' J&J Baby Powder was fit to be used for the purpose for which it was intended when, in fact, it was defective and dangerous and by other acts alleged herein. These representations were made in marketing and promotional materials.

109.    The actions and omissions of Defendants alleged herein are uncured or incurable deceptive acts under the statues enacted in the states to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising.

110.    Defendants had actual knowledge of the defective and dangerous condition of Defendants' product and failed to take any action to cure such defective and dangerous conditions.

111.    Decedent relied upon Defendants' misrepresentations and omission in determining which product to use.

112.    Defendants' deceptive, unconscionable or fraudulent representations and material omissions to Decedent and other consumers constituted deceptive acts and practices.

113.    By reason of the unlawful acts engaged in by Defendants, and as a direct and proximate result thereof, Decedent and Plaintiff suffered ascertainable losses and damages.

114.    As a result and proximate result of Defendants' violations of the states' consumer protection laws, Decedent has sustained economic losses and other damages and is entitled to statutory and compensatory damages in an amount to be proven at trial and to be paid to her heirs through her estate.

WHEREFORE, Plaintiff demands judgment against Defendants and each of them, individually, jointly, severally and, in the alternative, requests restitution and disgorgement of profits, together with interest, costs of suit, attorneys' fees, and all such other and further relief as this Court deems just and proper.

23

## COUNT ELEVEN - NEGLIGENT MISREPRESENTATION
## (ALL DEFENDANTS

115.     Plaintiff hereby incorporates by reference each of the preceding paragraphs as if fully set forth herein.

116.     Defendants had a duty to accurately and truthfully represent to the medical and healthcare community, Decedent, and the public, that J&J Baby Powder had been tested and found to be safe and effective for use in the perineal area.  The representations made by Defendants, in fact, were false.

117.     Defendants failed to exercise ordinary care in the representations concerning J&J Baby Powder while they were involved in their manufacture, sale, testing, quality assurance, quality control and distribution in interstate commerce, because Defendants negligently misrepresented J&J Baby Powder's high risk of unreasonable, dangerous and adverse side effects.

118.     Defendants breached their duty in representing that J&J Baby Powder has no serious side effects.

119.     As a foreseeable, direct and proximate result of the negligent misrepresentations of Defendants as set forth herein, Defendants knew, and have had reason to know, that J&J Baby Powder had been insufficiently tested, or had not been tested at all, and that they lacked adequate and accurate warnings, and that it creased a high risk, and/or higher than acceptable risk, and/or higher than reported and represented risk of adverse side effects.

120.     As a proximate result of Defendants' conduct, Decedent was injured and sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care and comfort, economic damages, and premature death, and Plaintiff is entitled to damages therefor.

WHEREFORE, Plaintiff demands judgment against Defendants, and each of them, individually, jointly, severally and, in the alternative, requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and all such other and further relief as this Court deems equitable and just.

COUNT TWELVE - CIVIL CONSPIRACY
(ALL DEFENDANTS)

121.    Plaintiff hereby incorporates by reference each of the preceding paragraphs as if fully set forth herein.

122.    Defendants and/or their predecessors-in-interest, knowingly agreed, contrived, combined, confederated and conspired among themselves to cause injuries, disease and/or illnesses and death by exposing Decedent to harmful and dangerous products.  Defendants further knowingly agreed, contrived, confederated and conspired to deprive Decedent of the opportunity of informed free choice as to whether to use J&J Baby Powder or to expose Decedent to said dangers.  Defendants committed the above described wrongs by willfully misrepresenting and suppressing the truth as to the risks and dangers associated with the use of and exposure to the J&J Baby Powder.

123.    In furtherance of said conspiracies, Defendants performed the following over acts:

1. For many decades, Defendants, individually, jointly and, in conspiracy with each other, have been in possession of medical and scientific data, literature and test reports which clearly indicated that when used in an ordinary and foreseeable fashion by women, J&J Baby Powder was unreasonably dangerous, hazardous, deleterious to human health, carcinogenic and potentially deadly.

2. Despite the medical and scientific data, literature and test reports possessed by and available to Defendants, Defendants individually, jointly and, in conspiracy with each other, fraudulently, willfully and maliciously:

    a. Withheld, concealed and suppressed said medical information regarding the increased risk of cancer from Plaintiff (as set out in the "Facts" section of this

pleading).  In addition, on July 27, 2005, Defendants, as part of the TIPTF, corresponded and agreed to edit and delete portions of scientific papers submitted on their behalf to the United States Toxicology Program in an attempt to prevent talc from being classified as a carcinogen.

b. The Defendants, through the TIPTF, instituted a "defense strategy" to defend the talc at all costs.  Admittedly, the Defendants, through the TlPTF, used their influence over the NTP Subcommittee, and the threat of litigation, against the NTP to prevent the NTP from classifying talc as a carcinogen on its 10th RoC.  According to the Defendants, "...we believe these strategies paid off'.

c. Caused to be released, published and disseminated medical and scientific data, literature and test reports containing information and statements regarding the risks of cancer, which Defendants knew was incorrect, incomplete, outdated and misleading.  Specifically, the Defendants, through the TIPTF, collectively agreed to release false information to the public regarding the safety of talc on July 1, 1992; July 8, 1992; and November 17, 1994.  In a letter dated September 17, 1997, the Defendants were criticized by their own Toxicologist consultant for releasing this false information to the public, yet nothing was done by the Defendants to correct or redact this public release of knowingly false information.

3. By these false and fraudulent representations, omissions and concealments, Defendants intended to induce Decedent to rely upon said false and fraudulent representations, omissions and concealments and to continue to expose herself to the dangers inherent in the use of and exposure to J&J Baby Powder.

124.    Decedent, reasonably and in good faith, relied upon the aforementioned fraudulent representations, omissions and concealments made by Defendants regarding the nature of J&J Baby Powder.

125.    As a direct and proximate result of the aforementioned fraudulent representations, omissions and concealments made by Defendants regarding the nature of J&J Baby Powder and Decedent's reliance thereon, Decedent purchased and used, as aforesaid, J&J Baby Powder that directly and proximately caused Decedent to develop cancer.  Further, Decedent was caused to incur medical bills, lost wages, conscious pain and suffering and premature death by at least 30 years, for which Plaintiff may recover for her heirs via her estate.

126.    As a direct and proximate result of Decedent's reliance, she sustained injuries,

illnesses and death and was deprived of the opportunity of informed free choice in connection with the use and exposure to J&J Baby Powder.

WHEREFORE, Plaintiff prays for judgment against all Defendants, each of them, in a fair and reasonable sum in excess of Seventy-Five Thousand Dollars ($75,000.00), together with costs expended herein and such further and other relief as the Court deems just and appropriate.

COUNT THIRTEEN - ACTING IN CONCERT<br>(ALL DEFENDANTS)

127.    Plaintiff realleges and incorporates by reference every allegation of this Complaint as if each were set forth fully and completely herein.

128.    At all times pertinent herein, Imerys Talc, Johnson & Johnson Defendants and the Personal Care Products Council f/k/a Cosmetic, Toiletry and Fragrance Association (PCPC), knew that J&J Baby Powder should contain warnings on the risk of gynecological cancer posed by women using the product to powder the perineal region but, purposefully sought to suppress such information and omit such information from talc based products so as not to negatively affect sales and maintain the profits of the Johnson & Johnson Defendant, Imerys Talc and the members of the PCPC.

129.    Additionally and/or alternatively, the Defendants aided and abetted each other in the negligence, gross negligence and reckless misconduct. Pursuant to the Restatement (Second) of Torts §876, each of the Defendants is liable for the conduct of the other Defendants for whom they aided and abetted.

130.    As a direct and proximate result of Defendants concerted action, Decedent purchased and used, as aforesaid, J&J Baby Powder that directly and proximately caused her to develop ovarian cancer and die.  Further, Plaintiff was caused to incur medical bills and

conscious pain and suffering for which Plaintiff may recover.

WHEREFORE, Plaintiff prays for judgment against all Defendants, each of them, in a fair and reasonable sum in excess of Seventy-Five Thousand Dollars ($75,000.00), together with costs expended herein and such further and other relief as the Court deems just and appropriate.

COUNT FOURTEEN - AIDING AND ABETTING
(DEFENDANT PERSONAL CARE PRODUCTS COUNCIL)

131.    Plaintiff realleges and incorporates by reference every allegation of this Complaint as if each were set forth fully and completely herein.

132.    Upon information and belief, Defendant, Personal Care Council, f/k/a Cosmetic, Toiletries and Fragrance Council, knowingly and willfully aided and abetted the fraudulent marketing and sales described herein.

133.    Defendant, PCPC, aided and abetted this fraudulent scheme by providing substantial assistance to Defendants, Imerys and Johnson & Johnson. This substantial assistance included, among other things, the "Facts" section of this pleading and the facts set forth above.

134.    Without Defendant, PCPC's, substantial assistance, involvement and participation, the fraudulent scheme would not have been possible.

135.    Decedent suffered serious injury and pecuniary losses as a proximate result of the aiding and abetting of Defendant, PCPC, including but not limited to, the loss of her life and the loss of thirty (30) additional years of living.

WHEREFORE, Plaintiff prays for judgment against all Defendants, each of them, in a fair and reasonable sum in excess of Seventy-Five Thousand Dollars ($75,000.00), together with costs expended herein and such further and other relief as the Court deems just and appropriate.

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the following damages be considered separately and individually for the purpose of determining the sum of money that will fairly and reasonably compensate Plaintiffs:

    a.  Severe impairment to Decedent's ovaries and reproductive system.

    b.  Medical expenses.

    c.  Pain and suffering.

    d.  Mental anguish, anxiety and discomfort.

    e.  Lost wages and income.

    f.  Fear of cancer and impending demise.

    g.  Physical impairment.

    h.  Physical disfigurement.

    i.  Loss of enjoyment of life.

    j.  Death.

    k.  Pre and post judgment interest.

    l.  Exemplary and punitive damages in an amount to be determined at trial.

    m.  Treble damages.

    n.  General damages.

    o.  Reasonable and necessary attorneys' fees and other disbursements and expenses of this action.

    p.  Such other relief to which Plaintiff may be justly entitled.

Respectfully submitted,

RAY ROBINSON LAW CO., L.P.A.

/s/ Sandra M. Kelly_____
   Sandra M. Kelly (0037008)

E-mail:  smkelly@rayrob.com
Christopher D. Kuebler (0004650)
E-mail:  ckuebler@rayrob.com
6100 Oak Tree Blvd., Suite 200
Cleveland, OH  44131
Phone:  (216) 328-2128
Fax  (216) 236-2409

Attorneys for Plaintiff

JURY DEMAND

Now comes the Plaintiff and hereby demand a trial by a jury on all issues triable of right by a jury.

Respectfully submitted,

Ray Robinson Law Co., L.P.A.

/s/Sandra M. Kelly_____

Sandra M. Kelly (0037008)
E-mail:  smkelly@rayrob.com
Christopher D. Kuebler (0004650)
E-mail:  ckuebler@rayrob.com
6100 Oak Tree Blvd., Suite 200
Cleveland, OH  44131
Phone:  (216) 328-2128
Fax  (216) 236-2409

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of August, 2019, the foregoing *Complaint, Jury Demand Endorsed Hereon and Request for Production of Documents* was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's System.

/s/ Sandra M. Kelly\_\_\_\_